Good morning. Good morning, Your Honors. John Ballas, on behalf of the Defendant Paul Johnson, I'm intending to reserve two minutes for rebuttal. Defendant Paul Johnson was convicted of making two false statements about an incident in which a Forest Service vehicle he was driving caught on fire in the Eldorado National Forest. We've raised on appeal a challenge to the sufficiency of the evidence argument, focusing on the materiality aspect, and then go to a couple of, I think, the substantial sentencing issues, the Sixth Amendment issue, and the definition of involved on the cross-reference in the guideline. The two false statements he was convicted of was that after the vehicle caught on fire, some campers showed up in a vehicle. And first, in a written statement, three days after the incident, he wrote that, I called dispatch to report that my vehicle was fully engulfed, and then some members of the public pulled up, when, in fact, they occurred the other way around. This statement, even if he admitted it was false during his testimony at trial, but it wasn't material to the government's investigation. Whether he reported the fire to dispatch before the campers showed up or a few minutes later, after they had left, would not have had any tendency to affect his testimony. In Article V, he made a similar statement in a recorded interview in October, several months later. There he told agents that at the scene, this was about nine months later, that he had told witnesses at the scene that he would call for help, rather than he had already called for help. And, again, he investigation. On the sentencing issues, I'd like to start with the Sixth Amendment issue. And the argument here is essentially that the district court violated the Sixth Amendment by sentencing Johnson for one offense, arson, when the jury convicted him only of another offense, the making of false statements. This is an argument that Scalia has advocated since the Rita opinion, that there's going to be some cases where a sentence cannot be upheld that will violate the Sixth Amendment if it's based on facts found beyond what was found beyond what the jury found. And I acknowledge that the Ninth Circuit, this Court, found in Treadwell it had rejected the opinion. But now the different standard of proof, though, isn't it? A different standard of proof. In Treadwell? No, no. For the sentencing as opposed to the to what the jury was had to ask. Yes. To answer. Yes. That's absolutely right. And the Court has said that the standard of proof is clear and convincing evidence in a situation like this where the jury finds beyond a reasonable doubt. But the more recent case law of the court. You're arguing that we shouldn't allow the judge to make that determination about whether or not the evidence is clear and convincing? We should just hold that if the jury didn't find him guilty, then the judge can't go there? I'm saying exactly in this case, when the Court uses a finding of arson to go from a guideline range of zero to six months to 41 to 51 months and imposes a sentence of 41 months, it would violate the Sixth Amendment because that sentence is not substantively reasonable based on the facts found by the jury beyond a reasonable doubt. Do you have any case that supports that argument? Well, the beyond so this is an issue that's been percolating since Justice Scalia mentioned in Rita. There's been three justices in a denial of cert position in Jones that it says that this issue should be raised again and has criticized the Court's Ninth Circuit's Treadwell decision. But I think that the decision that I'm arguing is right on point now is the more recent Hursley, Florida decision that evaluated that looked at the Florida capital sentencing scheme. And in that one, it essentially, the logical conclusion of that decision is that the rule has now changed, and it's not enough for the jury to make factual findings to authorize the maximum punishment as an apprendee, but any fact that is required to increase that punishment must be found by the jury. And in Hursley, Florida, Florida had this hybrid sentencing system where the jury first had to find an aggravating factor and then also make the an advisory recommendation to the judge on whether or not the death penalty was warranted based on all the aggravating and mitigating factors. The judge then has to independently also find an aggravating factor and then determine the death penalty was warranted. So — Kennedy. Counsel, I take your point about the death penalty, but that's different, isn't it? I mean, as I think Judge Reyes pointed out, on a regular basis in sentencing, district judges take into account what the PSR says about various and sundry things, which the jury may or may not have found. But I gather you're saying that if an element of a crime was specifically not found by the jury, that the district judge cannot rely upon that in sentencing? He could — In a civil context. The argument is not going that far. They can't consider it in determining influencing, determining the sentence. But if that is a fact that is required, necessary to impose a sentence, then it would violate the Sixth Amendment. And on your point, it was a death penalty case, but the entire analysis was not based on kind of death penalty law or the Eighth Amendment jurisprudence. It was all based on the Sixth Amendment and following the Apprendi line of cases, Ring and Hurst, et cetera. Briefly, on the other sentencing issue, on the issue of involved, the district court applied a cross-reference to increase the guidelines substantially because the offense involved arson, he found. The case law talks about defining involved in two different ways, a broader sense of just being related to or a more narrow sense, as we're advocating, that it included something as a necessary part of. And that is what this Court used as a definition in Franklin in a different context and I think is more appropriate and would not include the arson here. Do you want to save the balance of your time for rebuttal? Yes. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Audrey Hemesouth on behalf of the United States. The materiality issue in this case as to the sufficiency of the evidence, I think, is actually quite clear from the record. The agent that was first investigating this case, the one first on the scene, was a Forest Service agent who is up there trying to determine what caused this fire. Did the vehicle light the wild land on fire or did the wild land light the vehicle on fire? I take that point, counsel, but as your opponent indicated, if I understood him correctly, the second false statement really wasn't very material because you need it in the first false statement. Isn't that correct? In other words, how did the second statement make any difference in terms of an investigation of arson? Your Honor, just to set the time for that second false statement, at this point there's been a second fire. The Forest Service warehouse has gone up in flames and Mr. Johnson is involved in that fire as well. And so now three agents are investigating both fires. So they've reopened the investigation into the vehicle fire, which was initially ruled an accident, which to me that drives home the whole materiality of the first false statement. And you – I gather you're contending that it was the second statement that motivated them to reinvestigate what they had closed before. Is that correct? I think it's actually the second fire that motivated them. Right. To reinvestigate. So one person, two fires in less than a year is a – it's a suspicious circumstance. So they're investigating both fires. And as the trial testimony made clear, I think in a couple of places, at least in the testimony of the ATF agent, Brian Parker, the timeline of a fire, the timeline of a sequence of events that happens with regard to a fire, is critical in a fire investigation. And that's what both of these false statements are about, is that timeline. What happened when in the critical moments just after the fire had started? And so for Mr. Johnson to first reverse the order of what happened, that the campers had come – or that he'd called and then the campers came, that's an ordinary – that's what anybody would expect somebody to do if they have a cell phone and there's a fire, use the phone, call it in. In the second one, he understands from the investigators themselves that they have a sense of when that call happened and it was not the way he told it, the first version. So he's trying to thread a needle and say, oh, I told them I would call it in. So he's trying to dispel suspicion from himself. And that's something that has a natural tendency to cut off a line of inquiry into, well, why didn't you call it in? Why did you stop to talk with these campers about the snow line and camping spots up the road with your back to the car, knowing that the car was on fire the whole time, and you are somebody who holds a Firefighter II card? It's a very suspicious circumstance. And so, of course, he told it a different way to try to dispel suspicion from himself.  Kennedy. Let me ask you about the charge false statements don't seem to me deal with the actual commission of arson. How do they, in quotes, involve arson in the context of the statute? It's using the definition that the district court did. So they are about and closely related to. And so in looking at this guideline, it's 2B1.1, which I think any district judge has a lot of experience with. It's a very common guideline. It involves all of the fraud cases. And in this case, so it doesn't apply just to false statements. It applies to everything, mail fraud, wire fraud, embezzlement. And in this case, it's a false statement. So I think we're in the heartland here of what it involves. It is a false statement about what happened with that fire, here committed by the  So, so, but the false statement arguably involved arson, but didn't it really involve the investigation of the arson and not the arson itself? That's fair, Your Honor, but I still think that fits within the circle of what's about and closely related to. He's trying to cover it up. He's trying to cover up the arson that he committed. Otherwise, there's no verbal statement, I think, that would cause an arson. It's too tangential. And all of it, I mean, this is in 2B1.1. So all of these are going to be fraud-type crimes at their core. And so for the Guideline Commission to put that in, the cross-reference into this guideline, means that I think in every case there's going to be some space in between what the crime of conviction is and the arson. But here, I think it's about as close as you can get where the statement is about the very arson that the district court found by clear and convincing evidence occurred. It's about the investigation of the arson. Well, no, because when he's making the statement, he's writing up a one-paragraph his own written statement about what happened with the fire. And so at that point, I don't think he thinks he's being investigated for arson. He's doing what the Forest Service asked of him, which is write down the relevant things that happened that day. And he did that. And in doing so, he lied about it. And then in the second one, I think at that point, he is aware that there is an investigation going on of the arson. But he is he's trying to still cover his tracks, make himself not a suspect, make it seem like it was accidental. So at there's not, you know, precedent on this cross-reference, really, that we were able to find. But the Smith case, the Supreme Court case about the firearm, a misstatement involved a firearm, I think is about as close on point as is going to exist. And the Supreme Court in that Smith case said the definition of involved is expansive. And this Guideline 2B1.1 actually uses a number of different verbs throughout the Guideline, some more expansive than involved, some less. And so the word involved here, I think this Court should give it the expansive definition that the Supreme Court encouraged in Smith and is found by the district court. No other questions? The questions are from my colleague. I just have one other question. Two-level enhancement for obstructing justice for the testimony. Yes, Your Honor. You argue he's not being punished for testifying, but for this enhancement not to be applied under the facts as they were applied here, he'd have to testify that he gave a false statement and that he acted willfully. That would have to be his testimony to avoid the application of that two-level enhancement, wouldn't it be? I don't think he would have to testify that he did it willfully. I think the district court under this Court's case law finds three things, and one of them is willful. No, I'm talking about the he was enhanced because he testified and the judge found that he perjured himself. Correct, Your Honor. And if he was to testify and to avoid that enhancement under this case, he would have to get on the stand and basically admit, I gave a false statement, I did it willfully. Oh, I see. Otherwise, he wouldn't have. Well, that's so I think in this case it's maybe a little unusual, but it happened and he was asked a question that had exactly all the elements listed in it, and he answered that question in the negative. And so that captures, that captures what we say is the perjury here. It was perjury. But what the district court did was go an extra step, which is to say this testimony that he gave was not the result of a faulty memory. So in Your Honor's example, I suppose it's possible that someone could testify truthfully at the time as a result of a faulty memory, deny all the elements of the crime, and then the court would not automatically impose the perjury and the obstruction of judgment plus 2. But here the court found that it was not the result of a faulty memory, and so properly gave the enhancement for obstruction of justice.  Other questions? Thank you, counsel. Thank you, Your Honor. So, counsel, you have some rebuttal time. Thank you. I have two points I want to make. First, following up on Judge Smith's point on the materiality of the second statement, which is the March, which is the count five statement, that was in a two-hour interview with three agents in October about nine months after the fire. And I think it's significant that during, in that interview, Johnson acknowledged he told investigators he admitted that he called dispatch after talking to campers rather than before. And then after that, in that same interview, but a little bit afterwards, when they asked him what he had told the witnesses, he told them that he would call for help when, in fact, he actually told them that he had already called for help. But the fact that in that same interview, he admitted that he called dispatch after talking with campers would be the significant point, and whether or not what he told the campers at the scene is not material in any sense. Well, let me ask you this, counsel. Your opposing counsel suggested that the way this occurred occurred a little bit later, and that it did influence the investigation or was intended by your client to influence the investigation. What's your response to that? Well, you know, she started off by talking about the warehouse fire, and that's kind of a red herring. I mean, we're talking about a specific false statement of what he told the campers at the scene about when he called for help. And in this case, since he already had written, already made a statement in writing in February, and then in that same statement earlier, he admitted that he told the campers that he had called dispatch after he had seen the campers, that the little further statement he made of what he told campers at the scene was not significant. Well, again, if my memory is correct, your opposing counsel suggested that the Forest Service was treating the first fire basically as an accident. Then you get to this later investigation, and what he said seemed to be intended to throw them off the trail of finding there was something more to it. Is that your understanding as well? I don't think you can make that one specific statement in the two-hour interview of throwing off the trail. After he had just told them, the significant point would be potentially when he reported at the dispatch. But it would be material if, again, arguendo, if they had closed the first investigation and what he said or the way he said it in the second statement threw them off. That would be material, would it not? If he told them something that would have a tendency to change their investigation or hinder their investigation, yes. But the argument is in this context, there's no way that could have, when he actually said during that interview that he had called dispatch later, that would have raised their suspicions. When he said he called dispatch later, that would have raised his suspicions. The further statement wouldn't have been material. Let me ask any other questions about my colleague. Thanks to you both for your argument. Thank you. The case just argued is submitted.
judges: Schroeder, M. Smith, Rayes